IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 18 CR 743-2 |
| COREY LOGSDON, | ) | Judge John Z. Lee |
| | ) | |
| | ) | |
| Defendant. | ) | |

**COREY LOGSDON'S SENTENCING MEMORANDUM**

NOW COMES Defendant , COREY LOGSDON, by and through his attorney, JOSHUA B. ADAMS, and respectfully requests, pursuant to 18 U.S.C. § 3553(a), and *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, that this Honorable Court set Mr. Logsdon's total offense level at 21, with a Criminal History Category I, and impose a sentence of 24 months imprisonment on Count 12, and 24 months home incarceration on Count Eight. Such sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a). In support of this request, Mr. Logsdon's states the following.

I. **SENTENCING REQUEST**

Beginning in November 2013, and lasting through May 21, 2014, Corey Logsdon became involved in a wide-ranging scheme to defraud IDES and

1

obtain money through the use of other individuals' identification. In the eight years since Corey stopped his illegal activity, he has matured tremendously. Most importantly, he is ashamed and remorseful for his conduct which brings him before this honorable court.

In the almost decade since his conduct in this case, Corey has started an art studio, established a stable and loving relationship, and hopes to start a restaurant in the Los Angeles are. Moreover, Corey began making payments towards the restitution he owes to the victims. He truly changed from the person who committed the crimes to which he pled guilty. As a result, a sentence of 24-months on Count 12, followed by a term of 24 months hone incarceration on Count Eight is sufficient, but not greater than necessary to comply with the sentencing goals of §3553(a).

## II.  THE GUIDELINE CALCULATION

### 1. Mr. Logsdon objects to a Criminal History II

The PSI gives Mr. Logdson two points for theft convictions that were imposed on the same day. PSI., ¶¶57,58. Based on PSI's information, both theft convictions occurred from the same set of facts. There was no intervening arrest. *See* §4A1.2(a)(2).  Therefore, Mr. Logsdon respectfully requests this honorable court set his Criminal History Category I.

## 2. Mr. Logsdon objects to the 3-point enhancement for manager/supervisor under §3B1.1(a).

The PSI recommends a three-level enhancement because it argues Mr. Logsdon served as a "manager or supervisor" of the scheme. PSI., ¶42. The test for "whether a defendant is a manager or supervisor in a criminal organization under §3B1.1 is practical, not formal." *United States v. Lovie*, 16 F.4th 493, 507 (7th Cir. 2021). "A manager or supervisor "should be straightforwardly understood as simply someone who helps manage or supervise a criminal scheme." *Lovie*, 16 F.4th at 506, quoting *House*, 883 F.3d at 724 (quoting *United States v. Grigsby*, 692 F.3d 778, 790 (7th Cir. 2012)).

Where "there is a dispute about whether the role enhancement applies to a defendant, the court should make a "commonsense judgment about the defendant's relative culpability given his status in the criminal hierarchy." *United States v. Dade*, 787 F.3d 1165, 1167 (7th Cir. 2015) (quoting *United States v. Weaver*, 716 F.3d 439, 443 (7th Cir. 2013)).

Here, Mr. Logdson worked in concert, not as a manager with some of the co-defendants. He paid Henry for information, and in return obtained funds as a result of that information. Ms. Wethersby and Mr. Logdson worked together to obtain patient information from IDES. Mr. Logsdon did not "direct" Ms. Wethersby to provide him with information, nor did she do

3

this because Mr. Logsdon ordered or directed her. Ms. Wethersby also made money as a result of the scheme. She did not receive a percentage of the money Mr. Logdson received from the identities she obtained. Plainly put, the individuals in this case worked together, and there was no hierarchy of leadership. Each person provided the other with information to fraudulently obtain IDES benefits. Nobody reported to Mr. Logdson, and Mr. Logsdon did not direct anyone to commit an unlawful act. Each person did this for their own enrichment and at their own direction. Therefore, Mr. Logsdon respectfully requests this honorable court not apply this enhancement.

### III. A SENTENCE OF 24-MONTHS FOLLOWED BY 24 MONTHS HOME INCARCERATION WOULD BEST ACCOMPLISH THE GOALS OF 18 U.S.C. § 3553(a)

In *United States v. Booker*, the Supreme Court effectively rendered the United States Sentencing Guidelines (USSG) advisory. 543 U.S. 220 (2005). However, the sentencing court is required to follow the list of factors enumerated in § 3553(a). In *Rita v. United States*, the Court held that district court judges are required "to 'impose a sentence sufficient, but not greater than necessary, to comply with the basic aims of sentencing in § 3553(a)." 127 S.Ct. at 2469.

Post-*Booker*, the district court should place "no limitation" on the information concerning the background, character, and conduct of a person convicted of an offense. *See* 18 U.S.C. § 3661; *Booker*, 125 S.Ct. at 760. There

4

are several "individual characteristics . . . not ordinarily considered under the Guidelines," but are still "matters that § 3553(a) authorizes the sentencing judge to consider." *Rita*, 127 S.Ct. at 2473 (Stevens, J., concurring).

The Court must impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2), " which are "the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2). In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)-(7).

With these principles in mind, we turn to Mr. Logsdon's proposed sentence.

*1. Nature and Circumstances of the offense*

Mr. Logdson acknowledges that his actions caused long term financial damage to everybody involved. Back in 2013, he saw this as a victimless

5

crime. These were only numbers on a ledger, without people's lives and their finances attached. Now, after spending time reviewing the facts of the case Corey realizes the vast number of individuals effected and the total amount of loss spread out over all the co-defendants.

Additionally, Corey's involvement is less than others in this case. On May 21, 2014, law enforcement raided the home in Los Angeles where he had been living. Officers found luxury cars and other evidence of the underlying scheme. PSI., ¶¶ 24-25. After that date, Mr. Logsdon ceased his illegal activities. This raid in effect scared Corey straight. He disassociated with his co-defendants, stopped using the IDES patient information and quit the scheme. Four years later, a grand jury indicted him for this conduct.

*2. Corey's personal history and characteristics*

Corey struggled with financial security from an early age. His parents divorced when he was five, and from then on, Corey and his mother only had each other. Corey's mom remarried, however that was short-lived, and the couple divorced after only a few years. PSI. ¶89. His mother suffered an injury at work and has been on disability since 2011. As a result, Corey always considered himself the "man of the house" and viewed it as his responsibility to take care of his mother, both financially and emotionally, even to this day.

This need to provide and take care of his mother comes from the lack of

6

any fatherly role model or influence in his life. Corey's father battled addiction most of his life and as a result, did not forge a bond with his son. PSI., ¶¶79-80. However, when Corey was 16 years old, he attempted to reconnect with his father. Unfortunately, Michael Logsdon died of a heart attack and the father and son reunion never happened. This wound is still fresh for Corey, who became emotional when discussing his father.

    Corey filled the void as the provider and head of the household in his father's absence. He constantly worried about having enough to eat, a proper home for his mother. It is perhaps this constant concern for money and security that drove Corey to commit these crimes. Admittedly, Corey went overboard and took it to the extreme, with luxury cars, phones, jewelry and other material goods.  However, in the time since his change of plea hearing, Corey has repaid over $2500 of the wrongfully obtained money. This shows a true acceptance of responsibility and remorsefulness.

    Additionally, Corey is working to build his own lawfully operated business. He is an artist with a studio and he and his girlfriend are starting a restaurant in the Los Angeles area. His goal is to operate these businesses so that he will not return to criminal activity to ensure financial security.

    Lastly, the letters attached in support of Corey depict a man who is deeply devoted to his friends and family. Austin Maxfield talks about how Corey let him stay at his home when Austin moved to Los Angeles. Group Ex.

A, at 1. Corey is also a dutiful son, who takes care of his mother to this day, despite living halfway across the country. Ex. A, at 4 . His fiancé, Esmeralda Rios talks about how much of a positive influence Corey has been on her, and the young family they hope to raise. Ex. A., at 2. Ms. Rios puts it best when she writes that she "did not meet the Corey that is being talked about in this case." Plainly put, Corey has completely turned his life around, and demonstrated to this honorable court that he is not a risk to recidivate.

   3. *The need for deterrence*

In this case, both general and specific deterrence are significant factors laid out in §3553(a). A sentence should send a message to not only the co-defendant in this case, but also any unindicted individuals who are engaged in similar conduct. It is Corey's position that he is a Criminal History I. Any sentence Corey receives will be the longest term of incarceration he ever experienced. That is compelling evidence that any sentence will have a deterrent effect on him. The likelihood that a defendant will engage in future criminal conduct is "a central factor that district courts must assess when imposing sentence." *Pepper v. United States*, 562 U.S. 476, 492 (2011).

The Supreme Court in *Graham v. Florida* stated that "a sentence lacking any legitimate penological justification is by its nature disproportionate to the offense." 560 U.S. 48, 71 (2010). In light of this, it has become increasingly recognized that it is the certainty, rather than severity,

8

of punishment that achieves deterrence. In May 2016, the U.S. Department of Justice's National Institute of Justice published a fact sheet entitled Five Things About Deterrence, which summarized the research that has been done on deterrence. Three things are particularly important to note: 1) the certainty of being caught is a vastly more powerful deterrent than punishment; 2) sending an individual convicted of crime isn't a very effective way of deterring crime; and 3) increasing the severity of punishment does little to deter crime.

Empirical data supports this argument. Section 3553(a)(2)(C) requires the judge to consider the "needs for the sentence imposed . . . to protect the public from further crimes of the defendant." The purpose of this section is "particularly important for those offenders whose criminal histories show repeated serious violations of the law." S. Rep. No. 98-225 at 76 (1983). A sentence of 24-months imprisonment, away from family, will have a sufficient deterrent effect on Corey.

9

## IV. CONCLUSION

For the foregoing reasons, Mr. Logsdon respectfully submits that a sentence of 24 months imprisonment, followed by 24 months home incarceration is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

> Respectfully submitted,
>
> /s/Joshua B. Adams
> Joshua B. Adams
> Counsel for Corey Logsdon

LAW OFFICES OF JOSHUA B. ADAMS, P.C.
900 W. Jackson Blvd., Suite 7 East
Chicago, IL 60607
(312) 566-9173

10